**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**


STUART ZISMAN                                                                          PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:04-CV-176HTW-LRA

DR. RONALD MASON, JR, PRESIDENT
OF JACKSON STATE UNIVERSITY;
ET AL.                                                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before this court is the defendants' motion for summary judgment filed pursuant

to Rules 56(b) and (c), Federal Rules of Civil Procedure.[1]  Defendants' motion attacks

plaintiff Stuart Zisman's remaining claims of:  (1) retaliation for the plaintiff's alleged

exercise of free speech rights; and (2) Zisman's state law claim of breach of

employment contract [docket # 72].  Plaintiff Stuart Zisman, prior to his termination, was

an Assistant Professor at Jackson State University.  The defendants herein are Dr.

Ronald Mason, Jr., Dr. Marinelle Payton, Dr. Charles Spann, Dr. Thomas Layzell, Dr.

David Potter and the Mississippi State Board of Trustees for Institutions of Higher

Learning.  By their motion, the defendants herein contend that all of Dr. Zisman's claims

---

[1]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

should be dismissed and that the defendants herein should be awarded judgment as a matter of law.  Although Dr. Zisman opposes the motion, this court, having studied the briefs of counsel and having heard oral arguments of the parties, is persuaded to grant the motion in all respects.

## BACKGROUND

Jackson State University ("JSU"), an historically Black University, hired Dr. Stuart Zisman ("Dr. Zisman"), a white male, in August, 2000, as an Assistant Professor in JSU's Department of Public Health ("the Department").  The professional relationship between JSU and Dr. Zisman leading up to his termination was a contentious one. Indeed, JSU contends that Dr. Zisman's unprofessional and unfounded criticisms of JSU and its faculty began almost immediately after Dr. Zisman was hired.  From the time spanning Dr. Zisman's employment and termination, says JSU, Dr. Zisman managed to antagonize JSU administrators, JSU faculty and even JSU students.  In its brief, JSU points to numerous actions by Dr. Zisman to make its point.  Soon after he arrived on campus, Dr. Zisman, without any factual foundation, says JSU, claimed to be a victim of retaliatory action.  Thereafter, Dr. Zisman threatened on several occasions to obstruct JSU's efforts to obtain accreditation for the Department and the School of Public Health if various personal demands of his were not met, such as his demand that various uncomplimentary documents be removed from his file.  Dr. Zisman challenged the qualifications of JSU's President, Dr. Ronald Mason, to lead the University.  Dr. Zisman not only alleged that Dr. Mason had no academic experience or background, which might be protected free speech, but Dr. Zisman also stated that Dr. Mason, when he arrived at JSU as its President, had been under the threat of indictment for his

2

previous role as Executive Monitor for the Housing Authority of New Orleans.  Dr.

Zisman also charged that Dr. Joseph Stevenson, then Provost and Vice President of

Academic Affairs for JSU, had misrepresented his academic credentials on his

application to JSU.  Dr. Zisman's ire was not confined solely to JSU and its personnel,

says JSU.  JSU operates under the Commission of Higher Education for the State

Board of Trustees for the Institutions of Higher Learning (IHL).  Dr. Thomas Layzell is a

former Commissioner and was currently on the Commission at the time of this dispute

between Dr. Zisman and JSU.  During this time, Dr. Zisman publically asserted that Dr.

Layzell was a "man of questionable ethics."  Dr. Zisman aired this criticism of Dr. Layzell

upon dissatisfaction with Dr. Layzell's response to Dr. Zisman's written criticisms of JSU

to Dr. Layzell.   Dr. Zisman additionally stated that JSU was under "the policy of

academic Jim Crowe."

        Additionally, according to defendants, during Dr. Zisman's employment, Dr.

Zisman: undermined the authority of Dr. Marinelle Payton, Dr. Zisman's Department

Chair, by being insubordinate; and created divisiveness and hostility in the Department

and the broader JSU community, fostering acrimony and filing grievances against co-

faculty who disagreed with Dr. Zisman.

        In September, 2002, Dr. Payton gave Dr. Dr. Zisman a letter signed by Dr.

Mason providing notice that his employment contract would not be renewed for the

ensuing year.  JSU subsequently withdrew this non-renewal letter.

        On April 30, 2003, Dr. Payton sent a letter to defendant Dr. Charles Spann

("Spann"), then Interim Dean of the School of Allied Health Services at JSU,

recommending Dr. Zisman's dismissal for cause and setting forth "reasons and events"

supporting JSU's proposed termination of Dr. Zisman.

On May 1, 2003, Dr. Mason provided Dr. Zisman a letter detailing the

recommendation to terminate his employment.  Dr. Mason enclosed a copy of Dr.

Payton's letter and informed Dr. Zisman of his right to a hearing.  JSU initially set Dr.

Zisman's termination hearing for Monday, May 12, 2003.  At  Dr. Zisman's request,

however, JSU moved the hearing date to Monday, August 18, 2003.  Dr. Zisman

objected to the hearing as improperly constituted and notified Dr. Stevenson and Dr.

David Potter ("Potter") of his refusal to attend.  Defendants advised Dr. Zisman that his

refusal to attend would be regarded as a waiver of his right to a hearing.  Dr. Zisman

again notified defendants that he would not attend the hearing.  On August 31, 2003,

JSU terminated Dr. Zisman, citing "contumacious conduct"[2] and "cause"[3] as the

grounds for his release.

## **Jurisdiction**

On March 5, 2004, Dr. Zisman filed the instant lawsuit, charging retaliation under

---

[2]MISS CODE ANN. § 37-101-15(f) states, in pertinent part,

[IHL] shall have the power and authority to elect the heads of the various
institutions of higher learning and to contract with all deans, professors, and
other members of the teaching staff, and all administrative employees of said
institutions for a term of not exceeding four (4) years.  The board shall have the
power and authority to terminate any such contract at any time for malfeasance,
inefficiency, or contumacious conduct[.]

[3]JSU's Faculty Personnel Policies and Procedures state that the "termination of
service of a [...] faculty member is made only under these extraordinary circumstances:
[...] (c) malfeasance, inefficiency or contumacious conduct; or (d) for cause."

Title 42 U.S.C. § 1983,[4] for violation of his First Amendment right to freedom of

speech.[5]  This court has subject matter jurisdiction over this Constitutional claim under

Title 28 U.S.C. § 1331, federal question jurisdiction.[6]  This court, pursuant to Title 28

U.S.C. § 1367,[7] also has supplemental jurisdiction over plaintiff's state law breach of

contract claim.

**Summary Judgment Standard**

Defendants urge this motion pursuant to Rule 56 of the Federal Rules of Civil

Procedure 56.[8]  The jurisprudence of Rule 56 is clear:  any party may move the court

for a judgment in its favor if there are no disputed material facts and the applicable law

directs a verdict for the movant.  *Am. Home Assurance Co. v. United Space Alliance*,

378 F.3d 482, 486 (5th Cir. 2004). The moving party "need not negate the elements of

---

[4]Title 42 U.S.C. § 1983 permits any "citizen of the United States or other person within the jurisdiction thereof" who claims a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" to sue for redress.

[5]United States Constitution, amendment 1 prohibits Congress from making any law "abridging the freedom of speech," among other stated fundamental rights. This has been interpreted to provide legal protection for an individual's right to free speech, with certain limitations recognized by the courts.

[6]Title 28 U.S.C. §1331(a) provides the district court with original jurisdiction of any civil action that arises under the "Constitution, laws, or treaties of the United States."

[7]Title 28 U.S.C. § 1367 provides guidelines by which the district court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ."

[8]See footnote 1.

the nonmovant's case." *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir.

1994) (en banc).  Instead, the movant's burden is only to point out the absence of

evidence supporting the nonmoving party's case.  *Stults v. Conoco, Inc.*, 76 F.3d 651,

655 (5th Cir.1996). Once the moving party makes a properly supported motion for

summary judgment, the nonmoving party must look beyond the pleadings and

designate specific facts in the record showing that there is a genuine issue for trial.  *Id.*

Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the

nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a

whole, could lead to different factual findings and conclusions.  *Honore v. Douglas*, 833

F.2d 565 (5th Cir. 1987).  The district court must look to the full record, including the

pleadings, affidavits, and depositions.  *Williams v. Adams*, 836 F.2d 958, 961 (5th

Cir.1988).  Fact questions are considered with deference to the nonmovant.  *Reid v.*

*State Farm Mutual Automobile Insurance Company*, 784 F.2d 577, 578 (5th Cir.1986).

The evidence of the nonmovant is to be believed and all inferences are to be drawn in

his favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91

L.Ed.2d 202 (1986).  The court resolves factual controversies for purposes of summary

judgment in favor of the nonmoving party, but only when there is an actual controversy,

that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid*

*Air Corporation*, 37 F.3d at 1075.   In the absence of any proof, this court will not

assume that the nonmoving party could or would prove the necessary facts.  *Wallace v.*

*Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir.1996).

Finally, an issue is "genuine" if the evidence supporting its resolution in favor of

the party opposing summary judgment, together with any inference in such party's favor

that the evidence allows, would be sufficient to support a verdict in favor of the party.

*St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987).   A "material fact" is one that

might affect the outcome of the suit under governing law.   *Anderson v. Liberty Lobby*,

477 U.S. at 248, 106 S.Ct. at 2510.

### Law and Analysis

Retaliation for First Amendment Activity

In order to prevail on his § 1983 First Amendment claim of retaliation, Dr. Zisman

bears the burden of showing: (1) he suffered an adverse employment action; (2) as a

result of speech involving a matter of public concern; (3) his interest in speaking on the

matter of public concern outweighed the defendants' interest in promoting efficiency;

and (4) the adverse action was motivated by the protected speech.   *Foley v. Univ. of*

*Houston System*, 355 F.3d 333, 341 (5th Cir. 2003) (citation omitted).   Each element

will be discussed in turn.

### Adverse Employment Action

An adverse employment action is one that is "an ultimate employment decision,

such as hiring, granting leave, discharging, promoting, and compensating."   *Id*. at 340.

Actions regarding administrative matters or departmental procedures, "while extremely

important to the person who has dedicated [his] life to teaching, do not rise to the level

of a constitutional deprivation."   *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).

Since JSU terminated Dr. Zisman's employment, his proof meets this first element

requiring an adverse employment action.

<b><u>Public Concern</u></b>

Dr. Zisman asserts that JSU terminated him in reaction to Dr. Zisman's speech on matters of public concern relating to JSU and its administrators.  "Whether [Dr. Zisman] spoke on a matter of public concern is a legal question." *Kennedy v. Tangipahoa Parish Library*, 224 F.3d 359, 366 (5th Cir. 2000); *see also Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983).  The court must "seek a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. at 142.

This court is persuaded that the record before the court reflects that Dr. Zisman's statements addressed matters both public and private in nature.  In a "mixed speech" case the court will look to the content, context and form of the statements at issue to determine if the speech predominantly addressed a matter of public concern.  *Foley*, 355 F.3d at 341.  The presence of a "personal interest on the part of an employee . . . does not prevent finding that the speech as a whole raises issues of public concern." *Kennedy v. Tangipahoa Parish Library*, 224 F.3d 359, 366 (5th Cir. 2000).  Speech may relate to the public concern if it does not concern solely personal matters or management policies;  if releasing the speech to the public would "inform the populace of more than the fact of an employee's employment grievance" or the speech occurs against the backdrop of public debate; and if the speech was not "in furtherance of a personal employer-employee dispute." *Id.* at 372.

Thus, this court must determine whether Dr. Zisman's criticism of administrators' management style and qualifications was of a private nature and did not involve a larger issue of importance to the community. *See Caro v. City of Dallas*, 17 F. Supp. 2d 618, 631 (N.D. Tex. 1998); or whether Dr. Zisman's speech ". . . disclose[d] any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials . . ." *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2003); *see also Kennedy*, 224 F.3d at 373-4. This court finds, for instance, that Dr. Zisman's allegations of fiscal mismanagement and sexual improprieties between faculty and students involved matters of public concern, in terms of content. *See id.* The court's analysis, however, must not end here.

Prior to receiving notice in September, 2002, that his contract would not be renewed for the 2003-2004 school year, Dr. Zisman's speech amounted, at best, to personal grievances regarding "intra-office" disputes, such as complaints regarding departmental management procedures, the denial of request for travel reimbursement, and the agenda topics covered in departmental meetings.

The record indicates that Dr. Zisman's speech reached the possible level of communication protected by the First Amendment after Dr. Zisman received the non-renewal letter. As such, Dr. Zisman could not "engage in actions usually protected by the First Amendment in an attempt to frustrate the employment decision." *Bradshaw v. Pittsburgh Indep. School Dist.*, 207 F.3d 814, 818 (5th Cir. 2000) ("Such a rule would place the employee in a better position as a result of constitutionally protected conduct than he would have occupied had he done nothing."). Therefore, this court finds that

Dr. Zisman's speech, as a whole, did not involve matters of public concern and was not protected by the First Amendment. *Id.*

The court's decision that Dr. Zisman's speech was not a matter of public concern entitles the defendants to summary judgment on Dr. Zisman's First Amendment retaliation claim.  Nonetheless, assuming *arguendo* that Dr. Zisman's speech was a matter of public concern, Dr. Zisman's retaliation claim would still fail because Dr. Zisman has failed to prove: (1) that his interest in speaking on the matter of public concern outweighed the defendants' interest in promoting efficiency; and (2) that JSU's termination of Dr. Zisman was motivated by his protected speech.  This third element weighs Dr. Zisman's interest in protected speech against the University's interest in "the effective and efficient fulfillment of its responsibilities to the public."  *Connick*, 461 U.S. at 150.  The Fifth Circuit previously has held that a professor owes a university employer a "minimum duty of loyalty and civility to refrain from extremely disrespectful and grossly offensive remarks aimed at the administrators of the University."  *Duke v. N. Tex. State Univ.*, 469 F.2d 829, 840 (5th Cir. 1972).  The university's interest in responding to, and defending against, a breach of this duty will outweigh a claim for protection of the breaching statements.  *Id.*

It is not sufficient to show that protected speech played even a substantial role in motivating the adverse employment action if the action would have taken place anyway. *See Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 552 (5th Cir. 1982) (evidence of uncooperative, abrasive, and abusive demeanor "showed clearly that Hillis would not have been renewed regardless of his later first amendment activity"); *Gerhart v. Hayes*,

217 F.3d 320, 322 (5th Cir. 2000) (where failure to obtain funding would have led to termination regardless of protected speech); *Robinson v. Boyer*, 643 F.Supp. 975, 980 (N.D. Miss. 1986) (finding plaintiff's termination was due to refusals to comply with supervisor's instructions because of philosophical differences); *Hoffman v. Bd. of Trustees, E. Miss. Junior Coll.*, 567 So.2d 838 (Miss. 1990) (plaintiff's termination was due to persistent unprofessional conduct and a negative attitude, not in violation of a constitutional right); *but see Roos v. Smith*, 837 F.Supp. 803, 808-11 (S.D. Miss. 1993) (University's claim that termination was an effort to meet accreditation criteria, not retaliation for first amendment protected speech, failed where contradicted by facts).

The undisputed record reflects that Dr. Zisman made extrememly disrespectful and grossly offensive remarks toward JSU and its administrative officials.  Further, in his deposition on several occasions, Dr. Zisman admits having no first-hand knowledge whether his statements and accusations were truthful. Consider Dr. Zisman's statement that Dr. Mason was "under threat of indictment."  His statement was false and at a minimum was made with a reckless disregard for its truth.  Dr. Zisman's assertion that this was a reasonable assumption for a layperson based on a newspaper article describing a dispute between HUD and the Housing Authority of New Orleans (HANO) over expenditures during Dr. Mason's term as HANO's Executive Monitor is completely without merit.

Defendants provide evidence of numerous incidents in which Dr. Zisman disrupted faculty meetings; prompted complaints about his actions from other faculty and students; and challenged the authority of administrators.  The court earlier

addressed several of these complaints.  Consider these additional ones.  On August

20, 2003, Dr. Payton delivered a letter to Dr. Spann recommending Dr. Zisman's

termination.  In the letter, Dr. Payton detailed complaints she, Dr. Zisman's Department

Chair, had received in which other faculty members had complained of (1) attending

departmental meetings which Dr. Zisman interrupted to have "personal one-on-one

conversations" rather than discussing agenda items, (2) receiving threats of formal

grievances from Dr. Zisman for disagreeing with him, (3) working in a hostile

environment created by Dr. Zisman, (4) being afraid to complain openly about Dr.

Zisman's behavior, and (5) not wanting to leave Dr. Payton's office through the front

door to avoid Dr. Zisman's seeing them talking to Dr. Payton.

Next is Dr. Payton's letter, dated August 20, 2003, which informed Dr. Spann

that students had complained to Dr. Payton that Dr. Zisman (1) had spoken

disrespectfully about members of JSU faculty and staff during Dr. Zisman's classes and

(2) had taught "the same thing in each [of his classes]."

Defendants have demonstrated ample evidence of non-discriminatory grounds

for Dr. Zisman's termination.  Thus, even if Dr. Zisman's speech had addressed matters

of public concern, Dr. Zisman has failed to prove that his interest in speaking on the

matter of public concern outweighed the defendants' interest in promoting efficiency

and that his termination was the result of his protected speech.  In sum, plaintiff has not

established a material fact issue with respect to his constitutional claims.

Breach of Employment Contract

Dr. Zisman asserts a state law breach of contract claim, alleging JSU wrongfully

terminated him.  According to the termination letter, JSU terminated Dr. Zisman for

12

"contumacious conduct" and "for cause."  Here, JSU relies on Miss. Code Ann. § 37-101-15,[9] as a basis of support for the termination of Dr. Zisman's employment contract. Pursuant to this statutory provision, IHL was empowered to terminate Dr. Zisman for malfeasance, inefficiency or contumacious conduct.

The record clearly demonstrates a contentious relationship between Dr. Zisman and his supervisors, as well as with other faculty members.  Defendants list many incidents where Dr. Zisman challenged supervisors' authority, intimidated others, threatened to file grievances against fellow employees who disgreed with him, threatened to obstruct accreditation procedures, and repeatedly criticized university administration and policy.  Dr. Zisman breached  "a minimal duty of loyalty and civility" to JSU by making public and personal attacks on Dr. Mason and other defendants, particularly in light of the absence of any factual support for most of these statements. *See Duke*, 469 F.2d at 840.  The court finds that Dr. Zisman has failed under the undisputed evidence to show that JSU wrongfully terminated him.  The IHL Board was authorized both by the contract between Dr. Zisman and JSU and Mississippi law to terminate plaintiff's contract where his undisputed conduct certainly falls under contumacious conduct.  Plaintiff therefore cannot prove a key element, namely breach of contract by defendants necessary to maintain a breach of contract action.

## Conclusion

The undisputed material facts plainly show that Dr. Zisman cannot substantiate his claim that defendants violated his First Amendment rights.  He has failed to produce

---

[9]See Footnote 2.

evidence showing that his speech *sub judice* involved a matter of public concern.

Further, he has failed to show under the undisputed material facts that his speech was

a matter of public concern which outweighed the defendants' interest in promoting

efficiency.  Additionally, he has failed to show that his termination by JSU was

motivated by his alleged protected speech.  Alternatively, the facts plainly show that Dr.

Zisman evidenced contumacious conduct and disrespect towards his administrators,

co-faculty and students.  He slandered the President of his Institution.  He threatened to

sabotage the accreditation of his Department.  He formented discord between him and

the faculty and he sought negatively to influence students against that Institution,

negative influence which grew from his private animosity towards the Institution.  Dr.

Zisman's turbulent relationship with JSU, home-based in Dr. Zisman's personal

philosophical differences with JSU and its faculty and administrators, was bound to

result eventually in JSU's determination to terminate Dr. Zisman's contract because of

his conduct and not because of any First Amendment retaliatory grounds.

Accordingly, this court grants defendants' motion for summary judgment and

dismisses this lawsuit with prejudice.  The court will enter a Final Judgment in

accordance with the local rules.

SO ORDERED AND ADJUDGED, this the 30th day of March, 2008.

s/ HENRY T. WINGATE

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:04cv176 HTW-LRA
Memorandum Opinion and Order